IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DORICE M. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:04-CV-1087 |
| | ) | |
| JO ANNE B. BARNHART | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.  Introduction.

The plaintiff in this case has applied three times for disability insurance benefits pursuant to Title II of the Social Security Act,  42 U.S.C. § 401, alleging that she was unable to work because of a disability.

On the first two occasions, her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ).  On both occasions, following the hearing, the ALJ also denied the claim.  The Appeals Council rejected subsequent requests for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

On the third occasion, the plaintiff received benefits at the initial administrative level. The final decision of the Commissioner on that occasion was that she has been disabled since July 1, 2003. Both of the plaintiff's previous cases were reversed on appeal by this court. After a third hearing, the ALJ again denied benefits for the period before July 1, 2003. The Appeals Council denied review, and the decision of the ALJ became the final decision of the Commissioner. This case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3).

Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the United States Magistrate Judge (docs. #16-17, filed January 27, 2006). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[2] the Commissioner employs a five step, sequential

---

[2]A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

[The court must] . . . scrutinize the record in its entirety to determine the

---

[3]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

#### A.  Introduction

The plaintiff was 51 years old at the time of her final hearing before the ALJ, and she has a fifth grade education.  The plaintiff's prior work experience includes work as a hostess, laundry worker, machine operator, fast food worker, and waitress.   Following the administrative hearing, the ALJ concluded that the plaintiff had the following severe impairments: chondromalacia of the right patella and right femar, subluxation of the right patella, status-post right knee arthroscopy, osteoarthritis of the knees, obesity, degenerative disc disease, peripheral neuropathy, mild left carpal tunnel syndrome, mild polyneuropathy, chronic obstructive pulmonary disease, migraine headaches, depressive disorder with psychotic features, and anxiety disorder.   Nonetheless, the ALJ concluded that the plaintiff was not disabled before July 2003 because the plaintiff had the residual functional capacity to perform work as a cashier, parking lot attendant, production inspector, or sales attendant.[4]

#### B.  Plaintiff's Claims

The plaintiff presents two issues for review: (1) whether the ALJ improperly

---

[4] The ALJ specifically found that the plaintiff could perform "jobs that existed in significant numbers in the national economy" (R. 49) and the vocational expert testified that these jobs matched the profile given by the ALJ (R. 47).  The court therefore interprets the ALJ's finding as a finding that the plaintiff could perform these jobs.

discounted the plaintiff's claim of disabling fatigue; and (2) whether the ALJ presented a legally insufficient hypothetical question to the vocational expert.  Because the plaintiff has been granted benefits starting July 1, 2003, the court will consider these questions only with respect to disability between September 30, 1997 (the alleged date of onset, R. 323) and July 1, 2003.

## IV. Discussion

### A. Fatigue

#### 1. General Considerations

The plaintiff testified that she experienced severe fatigue, and that this was one of the main reasons she could no longer work (R. 129-30, 351; *see also* R. 813, 871, 888, 891, 1056, 1278).  The vocational expert, on whom the ALJ relied, testified that the plaintiff could not have worked with the levels of fatigue she described (R. 194).   In his hypothetical question to the vocational expert and in his opinion, the ALJ restricted the plaintiff from "ladders, ropes, and scaffolds," from driving vehicles, from "unprotected heights," and from being around hazardous machinery (R. 48, 187).  He explicitly based these restrictions on her fatigue (R. 187),  but did not otherwise restrict her on this basis.  In his opinion, the ALJ did not explicitly discount (or give reasons for discounting)[5] the plaintiff's claims of fatigue, though he did discount her alleged seizures and blackout spells due to lack of evidence (R. 45).

---

[5] The ALJ did determine that the plaintiff "exaggerates or possibly misrepresents symptoms and limitations" (R. 40), and provided reasons for this conclusion, but did not specifically tie this evidence to fatigue.

In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." The standard applies to subjective complaints other than pain. If the complaints meet the standard, the ALJ may still reject the claimant's testimony regarding subjective symptoms. However, if these are critical to the case, the ALJ must articulate specific reasons for rejecting the testimony. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

The plaintiff's claim of fatigue meets the first element of the Eleventh Circuit standard. Three medical experts at two different hearings testified that the plaintiff took medication that could cause fatigue (R. 43, 156-58, 176, 226-27). In addition, the plaintiff consistently complained of severe problems sleeping. She herself attributed this to trouble breathing (R. 1064), which resulted from obstructive sleep apnea (R. 47, 758, 818). She was also consistently diagnosed with depression (R. 869-95, 899-903, 1254-66, 1272-1301). An examining psychiatrist (Dr. David Hall) diagnosed "depressed mood with psychotic features" and described "sleep and appetite disturbance" as symptoms (R. 1299). Thus, the plaintiff's medication side effects, obstructive sleep apnea, and depression were underlying conditions that could cause her to be fatigued, and the record contained evidence of these conditions.

Furthermore, the plaintiff testified that her fatigue was a primary reason she could not

work (R. 129-30, 351), and the vocational expert testified that the plaintiff's fatigue was disabling if present to the degree alleged (R. 194). Thus, the plaintiff's fatigue was "critical to the case" within the meaning of *Holt*. Because the ALJ did not articulate any specific reasons for discounting the plaintiff's reported fatigue, the court must determine whether the record contains objective medical evidence that the plaintiff's fatigue was as severe as she alleged, or that the impairments she had could reasonably be expected to cause that degree of fatigue. If so, the ALJ did not correctly apply the pain standard and the court must reverse; if not, the ALJ complied with the standard.

2.  Medication Side Effects

At various times throughout the relevant period, the plaintiff took Prozac, Seroquel, and Zoloft (*see, e.g.,* R. 204-05, 407, 582, 649, 651, 875, 1275, 1290-92, 1295). At the plaintiff's third hearing, two medical experts testified. The first medical expert, Dr. Jack Evans, described fatigue as a possible side effect of these medications,[6] but said that the fatigue normally wore off after 4-6 weeks of use (R. 43, 156-58).[7] The second medical

_____

[6] At the plaintiff's second hearing, another medical expert, Dr. James Anderson, gave similar testimony (R. 226-227). Dr. Anderson also testified that someone with the plaintiff's "general medical problems...could conceivably have difficulties sleeping whether [she was] taking the medicines or not" (R. 228). However, this testimony was too vague and equivocal to create an issue for the court, as the medical experts questioned by the ALJ at the third hearing covered the same issues adequately.

[7] On cross-examination, Dr. Evans testified that the plaintiff's cardiopulmonary disease could cause shortness of breath, that constant shortness of breath would cause fatigue, and that the plaintiff's obesity would aggravate "any fatigue," but that there would be "no way to objectively measure that kind of effect" (R. 165-66). In the absence of the ability to measure this factor objectively, the court cannot remand for further findings on this point, as "medical evidence consisting of signs, symptoms, and laboratory findings" is required to support a finding of disability. 20 C.F.R. §§ 404.1508, 404.1528. Furthermore, Dr. Evans, who considered all of the plaintiff's physical limitations, testified that she could perform a limited range of light activity with unlimited sitting and up to six hours per day of standing and

expert, Dr. Nancy Sack, agreed with Dr. Evans' statements regarding medication (R. 176) and stated that her medications would have only a "mild" effect on the plaintiff's ability to work (R. 176, 897).   Thus, the record does not objectively support any claim that the plaintiff suffered disabling fatigue due to medication side effects.

### 3.  Sleep Problems

The record contains two direct studies of the plaintiff's sleep by Dr. William J. Leuschke: one on August 22, 2001 (R. 754-75, 818-20, 1048-55, 1065-67, 1070) and one on September 9, 2001 (R. 816-17, 1039-47, 1061-64, 1068-69).   Dr. Leuschke noted "spontaneous arousals" throughout the night (R. 1065).  On these occasions, the plaintiff slept 4.7 and 6.3 hours, respectively (R. 758, 769, 1039), though she testified that she often did not sleep more than "half the night" (R. 127, 133, 770, 1072).[8]  She also said that the sleep tests were of similar quality to her sleep at home (R. 769, 1071).   Dr. Leuschke observed "mild obstructive sleep apnea" with "no other significant abnormalities noted" (R. 27-28, 758, 818, 1048; *see also* R. 1040),[9] and Dr. Evans likewise diagnosed her sleep apnea as mild (with treatment), based on the objective tests in the record (R. 150, 152-53).   Based on her review of the record, Dr. Sack testified that the plaintiff's psychological problems (including her depression) could be well controlled with medication, but that the plaintiff was

_____

walking (R. 158-59).

[8] The plaintiff told the ALJ that she could not sleep the whole night and had to get up and pace. When he asked whether she sometimes did this as much as half the night, she said yes.  She told Dr. Leuschke that she went to sleep at 10:30 and arose at 6:00, with a total sleep time of 4 hours (R. 1072).

[9] The plaintiff testified that her apnea had not changed throughout the relevant period (R. 138).

sometimes noncompliant (R. 171-72, 178); the court's independent review of the record supports these findings (R. 42-43, 648-49, 651, 831, 875, 1275, 1281).[10,11]   Dr. Sack therefore concluded that the plaintiff's depression was (or could be, when she took her medication) "minimal" (R. 172).  Furthermore, in 2001 the plaintiff told Dr. Leuschke that she had suffered from sleep problems for twelve years (R. 1073), which included at least seven years of substantial gainful activity (R. 1080).  Thus, the objective medical evidence in the record does not support the conclusion that the plaintiff's sleeping problems actually caused disabling fatigue.  Neither does it support the conclusion that those impairments which might cause sleep problems were severe enough to be reasonably expected to cause disabling fatigue.  Since the record does not support these conclusions, the pain standard did not require the ALJ to articulate specific reasons for discounting the plaintiff's claims of disabling fatigue.  The decision of the ALJ is not due to be reversed on this ground.

## B.  Hypothetical Question

The ALJ found that the plaintiff could perform "simple grasping and fine manipulation with both hands limited to frequent repetition on the left" (R. 48).   The ALJ also gave great weight to the opinion of Dr. Evans, who said that the plaintiff should "avoid dust, extremes in temperatures, humidity, and other things like that that might exacerbate or

---

[10] At one point, in 2002, the plaintiff did tell a treating psychologist that she did not feel her medications were working (R. 1295), but on other occasions she reported that her medications, including Risperdal and Prozac, helped (875, 1281).

[11] The court further notes that in 2002, the plaintiff denied daytime sleepiness and had no history of major depression (R. 826, 828).

cause the pulmonary condition to worsen."  However, the ALJ's hypothetical question to the vocational expert assumed that the plaintiff could perform "simple grasping and fine manipulation *at least* frequently" and restricted the plaintiff from "*concentrated or excessive* exposures to pulmonary irritants, such as dust, odors, fumes, extremes of temperature and humidity" (R. 187-88).  The plaintiff argues that these differences render the hypothetical question legally inadequate.

While it is true that the opinion of a vocational expert can only constitute "substantial evidence" if the ALJ's hypothetical question adequately describes the plaintiff's impairments (*Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)), the differences described by the plaintiff are minor.  Furthermore, the vocational expert found substantial numbers of parking lot attending and cashier jobs even for a claimant who "cannot use [her] hands bi-manually" (R. 193) (a stricter limitation than that used by the ALJ).  In addition, an examination of the relevant entries in the Department of Labor's *Dictionary of Occupational Titles* persuades the court that the relevant jobs do not require more than frequent "grasping and fine manipulation" with the left hand, nor exposure to excessive dust, humidity, or extremes in temperature.  *See* Department of Labor, *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* (1993), Part A,  211.462-010 (cashier II), 915.473-030 (parking lot attendant),[12] 299.677-010 (sales attendant) ("fingering" is required only

---

[12] This job description as generally performed requires parking motor vehicles and thus is inconsistent with the ALJ's hypothetical; however, the vocational expert reduced the numbers to reflect jobs that did not allow "bi-manual dexterity," and the court concludes that these positions did not include driving cars.  The vocational expert also stated that a substantial number of jobs existed for a surveillance system monitor (R. 193), but the ALJ did not make use of this in his opinion.

"frequently" for cashier and parking lot attendant, and "often" for sales attendant;  not required "constantly," and no exposure to humidity, heat, cold, or "other environmental conditions" is required for any of them).

The plaintiff also argues that the ALJ wrongly failed to consider the plaintiff's fatigue in his hypothetical question.  In fact, as noted above, the ALJ restricted the plaintiff from "ladders, ropes, and scaffolds," from driving vehicles, from "unprotected heights," and from being around hazardous machinery based on her fatigue (R. 48, 187).  As shown above, he was not required to find her fatigue disabling, nor to find it more limiting than this.  The decision of the ALJ is not due to be reversed on this ground.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.  A separate order will issue.

DONE, this 15th day of November, 2006.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE